UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL RANDICK,
DENNIS AGUIRRE, and
WAYNE COFFELL,

      Plaintiffs,

v.

      Civil Case No. 20-11793
      Honorable Linda V. Parker

RICHARD J. SAWHILL,
JAMES BUZZIE, and
CHRIS VLK,

      Defendants,
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This action arises from a dispute between trustees who jointly administer multi-employer and union pension and welfare benefit plans associated with the Iron Workers' Local No. 25 Union ("Union"). Plaintiffs are the trustees appointed by the Union ("Labor Trustees"). Defendants are the trustees appointed by the employers ("Management Trustees"). The Labor Trustees filed this lawsuit pursuant to Section 302(c)(5)(B) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5)(B), asking the Court to declare the parties' rights and appoint an impartial umpire to arbitrate the parties' dispute.

The matter is presently before the Court on the Management Trustees' Motion to Dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9.) The motion has been fully briefed.[1] (ECF Nos. 18, 21.) Finding the facts and legal issues sufficiently presented in the parties' filings, the Court is dispensing with oral argument with respect to the Management Trustees' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore,

---

[1] To the extent the Labor Trustees are moving for summary judgment "on an expedited basis in [their] favor" in their response brief (*see* ECF No. 18 at Pg ID 468), such a request is procedurally defective, *see* R5(f) E.D. Mich. Electronic Filing Policies and Procedures ("Motions must not be combined with any other stand-alone document. … A counter-motion must not be combined with a response or reply.").

2

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing Twombly, 550 U.S. at 555).

The Management Trustees attach a 20-page, 23-paragraph declaration from Plaintiff Richard J. Sawhill to their motion, which presents numerous facts not alleged in the Labor Trustees' Complaint. (ECF No. 9-2.) Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). The Court will not consider Mr. Sawhill's declaration and therefore will not convert the Management Trustees' motion to one for summary judgment. The Court, however, may still consider "any exhibits attached [to the Labor Trustees Complaint], public records, items appearing in the record of the case and exhibits attached to [the Management Trustees'] motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

II.  **Factual Background**

The Union is a labor organization in an industry affecting interstate commerce under 29 U.S.C. § 185. (Compl. ¶ 2, ECF No. 1 at Pg ID 3.) Pursuant

3

to a collective bargaining agreement between the Union and certain employers and employer associations, various pension and welfare benefit funds ("Funds") were established to benefit Union members. (*Id.* ¶ 7, Pg ID 3.) The Funds are administered and maintained pursuant to separate Trust Agreements. (*Id.* ¶ 8, Pg ID 4; *see id.* Exs. 1-5, ECF No. 1-1 to 1-5.)

The LMRA authorizes such funds, provided the employer and employee are equally represented in their administration. 29 U.S.C. § 186(c)(5). Accordingly, the Union has appointed three trustees—currently Plaintiffs Michael Randick, Dennis Aguirre, and Wayne Coffell—and the employers have appointed three trustees—currently Defendants Richard Sawhill, James Buzzie, and Chris Vlk—to serve on a joint Board of Trustees responsible for administering the Funds. (Compl. ¶¶ 3, 4, 10, ECF No. 1 at Pg ID 3-4.) Since 2017, the Funds have operated using a joint-counsel arrangement pursuant to which the Labor Trustees and Management Trustees selected and retained separate lawyers and law firms. (*Id.* ¶ 20(d), Pg ID 8.) It appears that the Board of Trustees approved the retention of each side's initially chosen counsel, as well as the retainer agreements of those attorneys. (*See* Arb. Tr. at 99, ECF No. 1-6 at Pg ID 178.)

At a Board of Trustees' meeting in late 2017, the Management Trustees "did not object to" the retention of Jacqueline Kelly and Michael Asher from Sullivan Ward to replace the Labor Trustees' counsel at the time. (Compl. ¶ 20(a), ECF No.

4

1 at Pg ID 8.)  Due to a corporate change in late 2019, the Labor Trustees sought to engage the law firm of AsherKelly as their counsel of choice.  (*Id*. ¶¶ 18-19, Pg ID 6.)  The Management Trustees have refused to conduct the business of the Funds if the Labor Trustees use AsherKelly.  (*Id*. ¶¶ 24, 27-29, Pg ID 9-11.)  AsherKelly's engagement letter was to be presented at the Board of Trustees' meeting on March 11, 2020; however, the Management Trustees refused to attend if AsherKelly was present to represent the Labor Trustees.  (*Id*. ¶ 25, Pg ID 9.)

On May 11, 2020, an e-mail was sent to the Labor Trustees and Management Trustees on behalf of Labor Trustee Michael Randick, who served as the Chairman of the Board of Trustees.  (Compl. Ex. 10, ECF No. 1-10 at Pg ID 216.)  The e-mail contained a "Motion for review and consideration on behalf of the Labor Trustees," which confirmed "the Funds' co-counsel policy" allowing for each side to select their counsel of choice and that each side's "selection does not require consent of the [other side]."  (*Id*.)  Spaces were provided in the e-mail to approve or not approve the motion.  (*Id*.)  "[A]n electronic ballot vote" was requested by close of business that day, and the e-mail stated that the failure to respond "w[ould] be considered a 'No' vote."  (*Id*.)  The Management Trustees communicated that they would not respond.  (Compl. ¶ 32, ECF No. 1 at Pg ID 11.)

On May 12, 2020, another e-mail was sent to the Labor Trustees and Management Trustees, in which the Labor Trustees declared a "deadlock" and moved for each side to be represented by their counsel of choice "until … the co-counsel policy can be arbitrated." (*Id*. ¶ 33, Pg ID 11; *Id*. Ex. 11, ECF No. 1-11 at Pg ID 218-19.) The Management Trustees responded in an e-mail later that day:

> The resolution is defective, and contrary to law and the Trust Agreements of the Trust Funds.
>
> Therefore, the management trustees will not be responding to the proposed resolution.
>
> Paula [the Plan Manager], please place the proposed resolution on the June 17 agenda.

(*Id*. Ex. 11 at 1, ECF No. 1-11 at Pg ID 218.)

On May 15, 2020, Mr. Randick sent an email to the Management Trustees declaring a deadlock on the above "motions" and proposing that they be submitted for resolution by binding arbitration. (Compl. ¶ 15, ECF No. 1 at Pg ID 12; *Id*. Ex. 12, ECF No. 1-12 at Pg ID 221.) The Management Trustees rejected the declaration of a deadlock, asserting that a deadlock could not exist absent the presentation of the motions at an in-person meeting. (Compl. ¶¶ 36, 41, ECF No. 1 at Pg ID 12-13.) Further communications between the parties followed, in which the Labor Trustees insisted that they be allowed their counsel of choice, the Management Trustees refused to participate in Board of Trustee meetings if

AsherKelly attended, and the Labor Trustees refused to attend meetings if AsherKelly was not present. (*Id.* ¶¶ 37-39, Pg ID 12-13.)

In support of their refusal to respond to the Union Trustees' "motions," the Management Trustees rely on the Funds' Trust Agreements, which provide that "[a]ny action or decision of the Joint Board shall be made by a majority of the votes cast by the Trustees attending the meeting" or "without a meeting, provided it is done in writing with the concurrence of all of the Trustees." (*See, e.g.* Compl. Ex. 1 Art. 6.7, ECF No. 1-1 at Pg ID 25; *Id.* Ex. 2 Art. 4.2, ECF No. 1-2 at Pg ID 62.) The Trust Agreements address when a "deadlock" exists:

> A deadlock shall be deemed to exist whenever a proposal, nomination, motion or resolution made by any Trustee is not adopted by a majority vote (unless the same has failed for lack of a second or has been defeated by a majority vote) and the supporters of the proposal, nomination, motion, or resolution, notify the remaining Trustees, in writing, that a deadlock exists ….

(*See, e.g.*, Compl. Ex. 1 Art. 6.10, ECF No. 1-1 at Pg ID 53; *Id.* Ex. 3 Art. V(J), ECF No. 1-3 at Pg ID 112-13.)

As indicated earlier, the Labor Trustees filed this lawsuit to resolve the dispute.

### III.   The Parties' Arguments

In their motion to dismiss, the Management Trustees contend that the Labor Trustees' "motions" were substantively and procedurally defective and therefore

7

arbitration cannot be ordered as to the Labor Trustees' proposed action. Specifically, the Management Trustees argue that the proposal that each group of trustees select their own counsel, without the ability of the other trustees to veto that selection, violates the "structural" requirement of "equal representation" under the LMRA, as well as the Trust Agreements. The Management Trustees further argue that the Labor Trustees did not adhere to the Trust Agreements' procedural requirements for presenting and voting on a motion.

The Labor Trustees respond that the parties adopted the co-counsel relationship system years ago and refer to the Management Trustees' filings in other litigation, in which the Management Trustees acknowledge this co-counsel arrangement. The Labor Trustees argue that the Management Trustees should be bound by their previous statements here. The Labor Trustees maintain that the Trust Agreements do not designate the mechanism for selecting counsel. Therefore, the Trust Agreements do not preclude each group of trustees from selecting their own counsel once the Board of Trustees agreed to adopt a co-counsel relationship. The Labor Trustees urge the Court to disregard the Management Trustees' attempt to avoid a deadlock based on a procedural defect. In support of this argument, the Labor Trustees rely on a recent decision by the Honorable Terrence G. Berg in *Vlk v. Iron Workers' Local 25 Vacation Pay Fund*, No. 19-cv-12963, 2020 WL 5209360 (E.D. Mich. Sept. 1, 2020).

The Management Trustees also argue in their motion that the Labor Trustees' request for an order requiring the parties to adhere to the co-counsel arrangement until the arbitrator resolves the deadlocked issues is impermissible. According to the Management Trustees, such a request asks the Court to affirmatively order how the Funds are "administered" rather than how they are "established." The Management Trustees contend that the LMRA only confers jurisdiction on the courts to enjoin conduct with respect to the latter. The Labor Trustees respond that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), confers upon the federal courts the authority to declare the rights of the litigants.

## IV. Applicable Law & Analysis

There is no dispute that the Funds are subject to the LMRA. Section 302(c)(5) of the statute provides that "in the event the employer and employee groups deadlock on the administration of [a] fund and there are no neutral persons empowered to break such deadlock," the trust agreement establishing the fund must contain provisions that "the two groups shall agree on an impartial umpire to decide such dispute." 28 U.S.C. § 186(c)(5). Such provisions are contained in the Funds' Trust Agreements. (*See* Compl. Ex. 1 Art. 6.10, ECF No. 1-1 at Pg ID 53; *Id*. Ex. 2 Art. 4.3, ECF No. 1-2 at Pg ID 71; *Id*. Ex. 3 Art. V(J), ECF No. 1-3 at Pg ID 111-12; *Id*. Ex. 4 Art. IV § 7, ECF No. 1-4 at Pg ID 149-50; *Id*. Ex. 5 Art. V

§ 3, ECF No. 1-5 at Pg ID 171.) While there are slight variations in these provisions between the various Trust Agreements, they all provide in substance:

> A deadlock shall be deemed to exist whenever a proposal, nomination, motion or resolution made by any Trustee is not adopted by a majority vote (unless the same has failed for lack of a second or has been defeated by a majority vote) and the supporters of the proposal, nomination, motion, or resolution, notify the remaining Trustees, in writing, that a deadlock exists, … In the event of such deadlock, the Employer Trustees and the Union Trustees shall meet for the purpose of agreeing upon an impartial umpire to resolve such deadlock by deciding the dispute in question. In the event of the inability of the Employer Trustees and Union Trustees to agree upon the selection of such impartial umpire, then on the petition of any of the Trustees, the District Court of the United States for the Eastern District of Michigan, Southern Division, shall be empowered to make such an appointment. Such impartial umpire shall immediately proceed to hear the dispute and the award of such umpire shall be final and binding upon the parties ….

(Compl. Ex. 1 Art. 6.10, ECF No. 1-1 at Pg ID 53.)

The Trust Agreements expressly empower the Board of Trustees to retain counsel as part of its administration of the Funds. (*See, e.g., id.* Art. 5.3(f), Pg ID 47; *Id.* Ex. 3 Art. VI(D)(10), ECF No. 1-3 at Pg ID 116-17.) There can be no question that the Labor Trustees and Management Trustees have come to a stalemate regarding how to select counsel and who to select. This Court agrees with Judge Berg that the lack of a vote on these issues does not mean that there is no deadlock. The Court also believes that the existence of a deadlock is not

negated by the other defects identified in the Management Trustees' motion to dismiss.

Judge Berg did not "reverse course[]" (*see* Reply at 9, ECF No. 21 at Pg ID 542) when he found that the Trust Agreements "clearly contemplate[] a vote" but then concluded that the agreements "do[] not explicitly require a vote," *Vlk v. Iron Workers' Local 25 Vacation Pay Fund*, 2020 WL 5209360, at *5. An agreement can envision one scenario for how something will be accomplished but leave open the possibility of it happening another way. The Court adopts Judge Berg's reasoning for why a vote does not need to take place for there to be a deadlock:

> [G]iven Congress' stated preference for arbitration and the Supreme Court's related guidance (in the context of deciding whether a particular issue is arbitrable) that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, the Court will resolve the threshold ambiguity here in favor of arbitrability.

*Id*. (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (additional citation and brackets omitted).

Judge Berg further reasoned:

> Moreover, it is clear that as a practical matter, procedural gamesmanship surrounding the ability to bring a motion to a vote—of which both Plaintiffs and Defendants appear to be guilty—cannot be permitted to stymie the agreed-upon process for resolving disputes among the trustees. Were this Court to hold otherwise, either Labor or Management Trustees could avoid arbitration in the future by never bringing issues to a vote

11

> (or by knowingly doing so in a manner that triggers a procedural objection that a vote would be out of order). One side could then avoid consideration of the other side's proposals altogether by not allowing a vote to occur while simultaneously arguing that judicial review was improper, as Defendants have argued here. A requirement that a vote must take place when one-half of the Trustees have the procedural means to prevent such a vote—as is apparently the case here—would render the arbitration provision meaningless whenever one side would rather come to federal court. Such an interpretation cannot stand, and to hold otherwise would "violate the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2nd Cir. 1986) (holding that lawsuit by one-half of trustees of ERISA fund was properly dismissed because plaintiff trustees failed to comply with arbitration procedures before filing suit in federal court).

*Id*. (footnote omitted) The "procedural gamesmanship" Judge Berg contemplated in fact had been playing out between the Labor Trustees and Management Trustees while the motion to dismiss in his case was pending, bringing us to the current lawsuit. Whether the Labor Trustees are at fault for failing to present their motions at a properly scheduled Board of Trustees' meeting or the Management Trustees are at fault for ignoring the Labor Trustees' attempts to secure a vote in writing with the concurrence of all trustees,[2] the lack of a vote results from "one-half of the Trustees" invoking "procedural means" that "prevent[ed] such a vote[.]" *Id*. The

---

[2] Notably, the Trust Agreements permit both methods for the Board of Trustees to act or decide an issue. (*See, e.g.*, Compl. Ex. 1 at Art. 6.9, ECF No. 1-1 at Pg ID 52.)

12

arbitration provision in the Trust Agreements is meaningless if either side can utilize procedural mechanisms to evade arbitration and instead seek a resolution in federal court.

Nevertheless, the Management Trustees contend that the issues raised by the Labor Trustees' motions are not arbitrable because they involve actions beyond the Board of Trustees' powers and, as such, would violate the Trust Agreement and the LMRA's "equal representation" requirement. A trustee petitioning for the appointment of an umpire does not have to show that the trustee's interpretation of the issue at hand is correct; however, the trustee "must at least establish that it is a possible one." *Barrett v. Miller*, 276 F.2d 429, 432 (2d Cir. 1960) (internal citations omitted); *Mahoney v. Fisher*, 277 F.2d 5, 6 (2d Cir. 1960) ("Where a decision by an umpire in favor of the action requested would have permitted the trustees to exceed their powers under the trust, the arbitration sought was not to resolve a dispute within the jurisdiction of the trustees."). To be arbitrable, the dispute also must fall within the scope of the relevant arbitration provision. Nevertheless, "given the presumption in favor of arbitration, the … dispute must be referred to arbitration unless it can be said 'with positive assurance' that the dispute does not fall within the scope of the arbitration clause." *Bueno v. Gill*, No. 02 CIV 1000DLC, 2002 WL 31106342, at *4 (S.D.N.Y. Sept. 20, 2002) (quoting *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)).

13

As stated earlier, the appointment of counsel is within the administrative powers of the Board of Trustees. Thus, this case is distinguishable from cases cited by the Management Trustees where the trust agreements did not authorize the conduct at issue and the courts therefore found no legal basis upon which to appoint an impartial umpire. *See, e.g., Poston v. Caraker*, 378 F.2d 439, 442-43 (5th Cir. 1967) (finding that the trust agreements did not permit compensation to the trustees and therefore resolution consenting to such payments was not subject to arbitration); *Barrett*, 276 F.2d at 431 (concluding that the trust agreement did not permit self-insurance and thus deadlocked proposal to adopt a self-insurance program was not arbitrable); *Bueno*, 2002 WL 31106342, at *1, 5-6 (determining that the spin-off was beyond the power of the trustees to implement and was, therefore, a non-arbitrable dispute). The Trust Agreements do not preclude the Board of Trustees from agreeing to a co-counsel relationship—and, in fact, it appears that this is how the trustees have agreed to operate for years. More significantly, however, the scope of the arbitration provision in the Trust Agreements is exceptionally broad—covering any proposal, nomination, motion, or resolution not adopted by a majority vote—and it does not except the subject matter of the current dispute.

  The harder question, in this Court's view, is whether the Labor Trustees' proposal is not arbitrable because it would upset the "equal representation"

14

requirement of the LMRA. The District Court for the Western District of Missouri recently was presented with this issue in a factually similar matter. *Gillick v. Elliott*, No. 4:19CV3094, 2020 WL 1065646 (Mar. 5, 2020). In *Gillick*, the management trustees moved for the trust to pay "the reasonable and customary fees" of the counsel selected and retained by the management or labor trustees "to assist such Trustees in carrying out any responsibilities which they have under ERISA or the trust instrument …." *Id.* at *2. The management trustees voted in favor of the motion, and the union trustees voted against it, resulting in a deadlock. *Id.* The management trustees then filed a complaint seeking the appointment of an impartial umpire to resolve the dispute. *Id.* The district court concluded that the proposal was not arbitrable, reasoning that:

> permitting the Employer Trustees and Union Trustees each to select their own legal counsel, and indefinitely to incur fees to be paid by the Trust Fund, would endanger the delicate balance between the groups and destroy the effectiveness of Congress's safeguard. In its current form, without limitation as to scope or duration, the motion at issue here would permit the Employer Trustees unfettered access to funds meant for the benefit of employees.

*Id*. at *4 (footnotes omitted).

The Labor Trustees argue that *Gillick* is distinguishable because, in that case, the fund already had counsel and the employer trustees were proposing to allow both sides to retain their own counsel, thereby committing the fund to pay three different groups of lawyers on an infinite basis and possibly dissipate the

15

fund's assets. The Labor Trustees maintain that, pursuant to their proposals, the bills for counsel—whether counsel retained by the Labor Trustees or the Management Trustees—must be submitted and approved by the entire Board of Trustees before payment. To the extent this distinction exists, the Court finds it to be illusory. Surely counsel agreeing to represent the trustees will require the execution of a retainer agreement guaranteeing its fees, thereby binding the Board of Trustees to pay those fees (or, at the very least, reasonable and customary fees). But while the Court finds *Gillick* indistinguishable, it nonetheless reaches a different conclusion.

First, the Labor Trustees' proposal does not upset the equal representation of the Labor Trustees and Management Trustees in the "administration" of the Funds, as their attorneys would not be administering the Funds but would simply be advising the trustees on particular matters. Second, while the Funds may be obligated to pay the reasonable and customary fees of counsel for the Labor Trustees and Management Trustees, the Labor Trustees' "motions" do not empower either side to dissipate the assets of the Funds without the other side's consent. Notably, the trustees owe fiduciary duties to the Funds, which include the obligations to make all "decisions … with an eye single to the interests of participants and beneficiaries[,]" *Stiso v. Int'l Steel Grp.*, 604 F. App'x 494, 498 (6th Cir. 2015) (internal quotations omitted), and to preserve fund assets "for the

16

benefit of the employees to the greatest extent possible[,]" *see Stewart v. Nat'l Shopmen Pension Fund*, 730 F.2d 1552, 1563 (D.C. Cir. 1984) (citing *Adams v. New Jersey Brewery Employees' Pension Trust Fund, Local Union 843*, 670 F.2d 387, 397 (3d Cir. 1982)). This Court therefore does not have the same concern on which the *Gillick* court based its decision: that the Labor Trustees' proposal will open the way for "abuse[]" and "permit … unfettered access to funds meant for the benefit of employees." 2020 WL 1065646, at *4.

In short, the Court concludes that the parties are deadlocked with respect to the issues presented in the Labor Trustees' "motions" and that this dispute is arbitrable. The Court agrees with the Management Trustees, however, that having reached this conclusion, the LMRA does not empower the Court to direct how the parties should administer the Funds. *See Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 587-88 (1993) ("§ 302(e) does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in § 302(c)(5)"). Resorting to the Declaratory Judgment Act to issue the requested order would undermine the arbitrator's authority to resolve the parties' dispute and Congress' stated preference for arbitration.

Accordingly,

17

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF No. 9) is **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 30, 2021